IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEMAR TABB | ) | CASE NO. |
| 3747 Warrensville Center Road | ) | |
| Shaker Heights, Ohio 44122 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| BARR-NUNN TRANSPORTATION INC. | ) | |
| c/o Shari Proehl | ) | **JURY DEMAND ENDORSED** |
| Statutory Agent | ) | **HEREIN** |
| 1803 Burr Oak Blvd | ) | |
| Granger, Iowa 50109 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Demar Tabb, by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

**PARTIES**

1.  Tabb is a resident of the city of Shaker Heights, county of Cuyahoga, state of Ohio.

2.  Defendant is a corporation with its principal place of business located at 1803 Burr Oak Blvd,

    Granger, Iowa 50109.

**JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Tabb is

    alleging federal law claims regarding the deprivation of Tabb's rights under the Title the

    Americans with Disabilities Act of 1990.

4.  At all times relevant herein, Defendant employed individuals in the state of Ohio, owned and

    rented property in Ohio, operated facilities in Ohio, and maintained sufficient contacts with

    the State of Ohio so as to avail itself of jurisdiction in Ohio.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6.  The material events alleged in this Complaint occurred in Cuyahoga County.

7.  Within 300 days of the conduct alleged below, Tabb dual filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), and the Ohio Civil Rights Commission ("OCRC") Charge No. 532-2020-02302 against Defendant.

8.  On or about September 15, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Tabb regarding the Charge of Discrimination.

9.  Tabb received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10.  Tabb filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11.  Tabb has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

12.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

13.  Defendant owns and operates an interstate trucking company.

14.  Defendant hired Tabb as a truck driver on or around January 15, 2019.

15.  In or around late October 2019, Tabb began experiencing dimness and muted colors in his left eye ("Dimness").

16.  In or around November 12, 2019, Tabb contacted his primary care physician regarding the dimness he was experiencing.

17.  On or around November 12, 2019, Tabb began driving on an overnight assignment for Barr-Nunn ("November Drive").

2

18. During the November Drive, Tabb's primary physician contacted him and advised him to go to an emergency room immediately.

19. Upon the advice of his primary care physician, Tabb reported to Wendy, Last name Unknown. Defendant's safety officer, the Dimness, and that his primary care physician had ordered him to go to the emergency room ("Disclosure").

20. At all times relevant herein, Wendy acted directly or indirectly in the interest of Defendant in relation to its employees.

21. At times relevant herein, Wendy supervised and/or controlled Tabb's employment with Defendant and was empowered to take tangible employment actions against Tabb.

22. Wendy had a duty to report Tabb's Disclosure to Defendant.

23. Wendy did report Tabb's Disclosure to Defendant.

24. Defendant had knowledge of Tabb's Disclosure.

25. The Dimness impacted Tabb's sensory nervous system.

26. Following the Disclosure, Defendant perceived the Dimness to impact Tabb's sensory nervous system.

27. Tabb's Dimness was a physiological disability.

28. Following the Disclosure, Defendant perceived the Dimness to be a physiological disability.

29. Tabb's Dimness impacted one or more of his major life activities, including working.

30. Following the Disclosure, Defendant perceived Tabb's Dimness t impact one or more of his major life activities, including working.

31. Tabb has a record of the Dimness.

32. Despite the Dimness, Tabb was able to perform the essential functions of his job.

33. As a result of suffering from the Dimness, Tabb is and was considered disabled within the meaning of the ADA.

34. After Tabb reported his Dimness and his physician's orders to Wendy, Wendy ordered Tabb to park his vehicle in a safe place and find his own transportation home ("Wendy's Instructions").

35. Tabb complied with Wendy's Instructions.

36. Defendant had knowledge of Tabb's disability.

37. On or around November 14, 2019, Tabb went to the emergency room where he underwent an ultrasound and a CT scan. ("ER Visit")

38. Tabb was released from the ER Visit on or around November 14, 2019, with instructions to follow up with an optometrist.

39. On or around November 15, 2019, Tabb visited an optometrist who diagnosed him with an inflamed optic nerve and cleared him to return to work.

40. On or around November 15, 2019, Tabb informed Defendant's safety department of the optometrist's diagnosis and that he was cleared to return to work.

41. Defendant did not allow Tabb to return to work on November 15, 2019, after he informed them that he had been cleared to do so.

42. On or around November 15, 2019, Defendant informed Tabb that he was placed on a two-week medical suspension.

43. On or around November 15, 2019, Defendant ordered Tabb to undergo a Department of Transportation physical.

44. Tabb underwent Defendant's Department of Transportation physical. ("Physical")

45. During the Physical, Tabb provided Defendant's chosen physician with documentation from his emergency room visit and his optometrist.

46. At the conclusion of the Physical, the treating physician ordered Tabb to follow up with a neurologist.

47. The treating physician at the Physical did not tell Tabb that he was unable to work.

48. Upon leaving the Physical, Tabb immediately contacted a neurologist to set up a follow-up appointment.

49. The earliest neurology appointment Tabb could get was December 19, 2019.

50. On November 27, 2019, Tabb contacted Defendant and asked about his return to work ("Return Inquiry")

51. During the Return Inquiry, Defendant informed Tabb that it was terminating his employment.

52. Defendant informed Tabb that it was terminating his employment due to the Dimness.

53. Defendant informed Tabb that it was terminating his employment because it perceived that Tabb was unable to perform his job duties due to the Dimness.

54. As of November 27, 2019, Tabb had been cleared to return to work by his optometrist.

55. As of November 27, 2019, no medical professional had informed Tabb that he was unable to work due to the dimness.

56. As of November 27, 2019, Tabb was able and willing to return to work.

57. Defendant's assertion that Tabb was terminated due to an inability to work has no basis in fact.

58. Defendant's assertion of an inability to work did not actually motivate Defendant's decision to terminate Tabb.

59. Defendant knowingly terminated Tabb.

60. Defendant knowingly took an adverse employment action against Tabb.

61. Defendant knowingly took an adverse action against Tabb.

62. Defendant intentionally terminated Tabb.

63. Defendant intentionally took an adverse employment action against Tabb.

64. Defendant intentionally took an adverse action against Tabb.

65. Defendant knew that terminating Tabb would cause Tabb harm, including economic harm.

66. Defendant willfully terminated Tabb.

67. Defendant willfully took an adverse employment action against Tabb.

68. Defendant willfully took an adverse action against Tabb. There was a causal connection between Tabb's disability and Defendant's termination of Tabb.

69. In or around January 2020, Tabb was diagnosed with Multiple Sclerosis.

70. In or around January 2020, Tabb's treating physician informed him that the Dimness was caused by his Multiple Sclerosis.

71. Tabb receives treatment for his Multiple Sclerosis and is fully capable of performing the essential job duties of a truck driver.

72. There was a causal connection between Tabb's disability and Defendant's termination of Tabb.

73. There was a causal connection between Defendant's perception of Tabb as disabled and Defendant's termination of Tabb.

74. Upon information and belief, in December 2019, Defendant hired a non-disabled individual to replace Tabb.

75. As a result of Defendant's conduct, Tabb has suffered, and continues to suffer harm.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101 *et seq.*

76. Tabb restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. Tabb has Multiple Sclerosis which resulted in the Dimness.

78. Tabb's conditions constitute physical impairments.

79. Tabb's conditions substantially impair one or more of his major life activities including working.

80. Tabb is disabled.

81. Tabb informed Defendant of his disabling condition, the Dimness caused by Multiple Sclerosis.

82. In the alternative, Defendant perceived Tabb as being disabled.

83. Defendant perceived Tabb's condition to substantially impair one or more of his major life activities including working.

84. Defendant treated Tabb less favorably than other similarly-situated employees based on his disabling conditions.

85. Defendant treated Tabb less favorably than other similarly-situated employees based on his perceived disabling condition.

86. On or about November 27, 2019, Defendant terminated Tabb's employment without just cause.

87. Defendant terminated Tabb's employment based on his disabilities.

88. Defendant terminated Tabb's employment based on his perceived disabilities.

89. Defendant violated the ADA when it discharged Tabb based on his disabilities.

90. Defendant violated the ADA when it discharged Tabb based on his perceived disabilities.

91. Defendant violated the ADA by discriminating against Tabb based on his perceived disabling condition.

92. As a result of Defendant' discrimination against Tabb in violation of the ADA, Tabb has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Tabb to injunctive, equitable, and compensatory monetary relief.

93. As a result of Defendant' discrimination against Tabb in violation of the ADA, Tabb has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

94. In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of Tabb, thereby entitling Tabb to an award of punitive damages.

95. To remedy the violations of the rights of Tabb secured by the ADA, Tabb requests that the Court award him the relief demanded below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Demar Tabb requests judgment in his favor against Defendant, containing the following relief:

(a) A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States;

(b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

(c) An order directing Defendant to place Tabb in the position he would have occupied but for Defendant' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Tabb;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Tabb for all monetary and/or economic damages, including, but not limited to,

the loss of past and future income, wages, compensation, job security and other benefits of employment;

(e) Awarding against each Defendant compensatory and monetary damages to compensate Tabb for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(f) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Tabb for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(g) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Tabb for harm to his professional and personal reputation and loss of career fulfillment;

(h) An award of damages for any and all other monetary and/or non-monetary losses suffered by Tabb in an amount to be determined at trial, plus prejudgment interest;

(i) An award of punitive damages;

(j) An award of costs that Tabb has incurred in this action, as well as Tabb's reasonable attorneys' fees to the fullest extent permitted by law; and

(k) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

Daniel S. Dubow (0095530)
Samuel B. Robb (0099035)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  daniel.dubow@spitzlawfirm.com
          sam.robb@spitzlawfirm.com

*Attorneys For Plaintiff Demar Tabb*

JURY DEMAND

Plaintiff Demar Tabb demands a trial by jury by the maximum number of jurors permitted.

Samuel B. Robb (0099035)